## DALLAS NATIONAL BANK v. J. H. DAVIS & BROS.

### No. 2629.

**1. Fraud—Hindering and Delaying Creditors.**—Hull being largely indebted, contracted with Davis & Bros., creditors. They executed two instruments; one an absolute conveyance to 1200 head of cattle by Hull to Davis & Bros. By the other Hull was authorized to collect and deliver to Davis & Bros. of the stock at stipulated prices until $13,950 should be satisfied, upon which the residue of the cattle were to be reconveyed to Hull. The first instrument was placed upon record. There was testimony to the intent that the cattle be protected from other creditors of Hull. *Held,* that with such intent the contract was fraudulent as to other creditors, and the cattle subject to attachment at suit of other creditors.

**2. Fact Case.** — The two instruments, if there was no intent to hinder or delay creditors, construed together, would show an executory contract for the payment by Hull to Davis & Bros. of their claim out of the cattle. They would pass no title to the cattle that would withdraw them from seizure to satisfy other creditors.

**3. Instruments Not Evidencing a Sale.** — See instruments which, taken together, do not evidence a sale of cattle, with or without range delivery.

**4. Parol Declarations.**—Declarations of parties to a written contract to the effect that a contract upon the same subject had been made at the same time different from that written are not admissible to vary the written contract.

APPEAL from Clay. Tried below before Hon. P. M. Stine.

A sufficient statement is given in the opinion.

*Hazlewood & Templeton,* for appellant.— 1. A bill of sale, in order to pass title to stock cattle running at large on the range as against an attaching creditor of the vendor of such cattle, must in the absence of actual delivery thereof describe the same by giving the number, marks, and brands of each animal sold, or it must convey the marks and brands themselves of all such cattle, and such sale must be noted on the record of original marks and brands in the name of the vendee or purchaser thereof; and such bill of sale must embody the entire contract of sale and must be acknowledged and recorded in the office of the county clerk of the county wherein such cattle are ranging; otherwise, as against an attaching creditor of the vendor of such cattle, it is insufficient to pass the title thereto and ought not to be admitted in evidence. Rev. Stats., arts. 4562, 4564; Black v. Vaughan, 70 Texas, 47.

2. The two instruments executed by Hull and J. H. Davis & Bros. on the 5th day of June, 1885, constituted but one single contract, and the acknowledgment and registration of one of the parts thereof was not a valid registration of such contract, and was insufficient as against appellant to pass the title to the cattle in controversy to appellant. 1 Sayles' Civ. Stats., 698, and authorities cited; Howards v. Davis, 6 Texas, 173–179; Dunlap v. Wright, 11 Texas, 597–601; Wallis v. Beauchamp, 15 Texas, 303; 1 Greenl. on Ev., sec. 268.

3. The contract between J. L. Hull and appellees having been re-

duced to writing and signed and executed by the parties thereto, it was error to admit parol evidence to vary the terms of or to contradict such written contract or agreement. Astugueville v. Loustaunau, 61 Texas, 233–237; 1 Greenl. on Ev., secs. 275, *et seq.*

4. The acts and declarations of J. L. Hull made after the execution of the pretended transfer of the property in controversy to appellees was hearsay, was irrelevant, and was not admissible for the purpose of proving the good faith of the transaction nor for any other purpose, and the admission of such evidence was reversible error. Garrahy v. Green, 32 Texas, 202; Astugueville v. Loustaunau, 61 Texas, 233–237; Overstreet v. Manning, 67 Texas, 657; Wilson v. Simpson, 68 Texas, 306; Strickle v. Bender, 15 Pac. Rep., 580; Walden v. Purvis, 15 Pac. Rep., 90; Crust v. Evans, 15 Pac. Rep., 214; Wait's Fraud. Con., sec. 278; Whiteford v. Buckmeyer, 39 Am. Dec., 640; Paige v. Cagwin, 42 Am. Dec., 68.

5. The reservation by J. L. Hull of the interest in the cattle in controversy which was retained by him in the written contract entered into by him with appellees for the sale of such cattle had the effect to hinder and delay the other creditors of said Hull, and as against them rendered such contract fraudulent and void; and appellees can not avoid the legal effect of such reservation in said contract by showing that there was in fact no actual intention to hinder, delay, or defraud such other creditors, nor by showing that there was not in fact a sufficient number of said cattle to satisfy said Hull's indebtedness to appellees, and the court should have so instructed the jury.

On the effect of the reservation in the written contract. Edington v. Rogers, 15 Texas, 188–196; Howerton v. Holt, 23 Texas, 52; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Elser v. Graber, 69 Texas, 222; Astugueville v. Loustaunau, 61 Texas, 233–237; Wait's Fraud. Con., secs. 272, 327; Griffin v. Barney, 2 N. Y., 371; Bump. on Fraud. Con., pp. 214, 362; Winkley v. Hill, 31 Am. Dec., 215; McCollough v. Hutchinson, 32 Am. Dec., 776.

The transaction must stand or fall as a whole. Black v. Vaughan, 70 Texas, 47; McClinton v. Lambeth, 65 Texas, 108; Bump. on Fraud. Con., p. 476.

On presumption of intent from acts done. Miller & English v. Jannett & Franke, 63 Texas, 82–86; Wait's Fraud. Con., secs. 8–11, 382.

*Stephens & Herbert* and *Chestnutt & Welborne*, for appellees.— 1. The appellees submit that a debtor may prefer a creditor and may sell to him enough property to pay the debt due him, though he may thereby prevent other creditors from collecting any part of their debt, if such sale is made in good faith and no more property is taken than is necessary to pay the debt. La Belle Works v. Tidball, 69 Texas, 161; Edwards v. Dickson, 66

Texas, 613; Schneider & Davis v. Sansom, 62 Texas, 201; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Edrington v. Rogers, 15 Texas, 188.

2.   The execution and proper record of the bill of sale, and the delivery thereof, and the payment to appellee of the money by witness Houston for the forty odd head of cattle then in Bellevue, and the delivery to them of the bunch of cattle then in Aldin's pasture, and the delivery by appellees to Hull of the notes Hull owed them, and the taking up and payment of the judgment in the United States Court at Dallas against J. L. Hull et al., evidence a complete sale of said cattle to appellees, the payment of the purchase money, and the extinguishment of the indebtedness between Hull and appellees and the delivery of the stock of cattle long before the appellees attached the same stock of cattle, said bill of sale having been made on the 5th of June, 1885, and said levy by appellants having been made on June 22, 1885.   It is insisted that these acts evidence an executed and not an executory contract.  Wells v. Littlefield, 59 Texas, 556; La Belle Works v. Tidball, 59 Texas, 161;  Key v. Brown, 67 Texas, 300; Railway v. Beard, 68 Texas, 265;  Boaz v. Schneider, 69 Texas, 128;  Grimes v. Watkins, 59 Texas, 133;  Masterson v. Goodlett, 46 Texas, 402;  Ferguson v. Ferguson, 27 Texas, 340;  Scarbrough v. Alcorn, 74 Texas, 358.

3.   Contemporaneous written contracts relating to the same subject must be construed together and so as to give effect to all; and a contemporaneous parol agreement consistent with the written agreement and forming a part of the contract, although not reduced to writing, will be construed in connection with the written part of the contract.  Sayles' Civ. Stats., art. 2245;  Hearne v. Gillett, 62 Texas, 23;  Preston v. Breedlove, 36 Texas, 96;  Ackerman v. Branden, Ct. App. C. C., 757.

STAYTON, CHIEF JUSTICE.—Appellant caused the property in controversy to be seized under a writ of attachment, as the property of J. L. Hull, in an action instituted against him and others to recover $3560.92, in which a judgment with foreclosure of attachment was subsequently obtained.

Appellees made claim to the property under the statute, and this is a proceeding to try the right of property.

That the cattle in controversy were the property of Hull at the time attachment was levied is not questioned, if appellees had not acquired title thereto.

Appellant's attachment was levied on the cattle on June 22, 1885, but appellees claim that before that date the cattle had become theirs by purchase from Hull.

On June 5, 1885, Hull was insolvent, and known so to be by appellees, to whom he was indebted in a large sum of money.   On that day Hull executed to appellees two instruments of writing.

The first of these was on its face an instrument conveying from Hull

to appellees absolutely all the cattle owned by him in brands described, estimated at 1200 head, for a recited consideration of $13,950.

This instrument was acknowledged and duly recorded in the county of Hull's residence.

The other instrument was as follows:

"*The State of Texas, County of Clay.*— This indenture made and entered into this 5th day of June, A. D. 1885, between J. L. Hull, of the county of Clay and State of Texas, party of the first part, J. H. Davis, J. R. Davis, and W. W. Davis, composing the firm òf J. H. Davis & Bros., parties of the second part, witnesseth that the party of the first part is to gather sufficient cattle in the brands and of the kinds and from among the cattle described in a bill of sale of this date from the party of the first part to the parties of the second part, which bill of sale is referred to for a more definite description, to pay to said parties of the second part $13,950 at the rate of $14.50 per head.

"Said party of the first part is to commence gathering and delivering said cattle on or before July 1, A. D. 1885; all of said cattle to be gathered and delivered to the parties of the second part on or before October 1, A. D. 1885; and the parties of the second part agree to furnish $240 within twenty days from this date, and $230 from time to time and in such amounts as parties may agree upon until the cattle are gathered, said money to be used as expenses for gathering said cattle. The said party of the first part agrees to furnish three hands besides himself to gather and deliver said cattle, and the parties of the second part one hand, to be boarded by the party of the first part.

"The parties of the second part agree to pay off a note held by C. E. Welesley, at Dallas, Texas, as given by the party of the first part and G. M. Boyd, W. T. Harness, A. L. Butler, John M. Jones, J. M. White, and Philip Lanius, and release all said parties from liability on said note or judgment if it has been placed in judgment; and the parties of the second part agree to fill the contract made by the party of the first part with E. F. and W. S. Ikard to deliver about 200 head of 1-year and 2-year-old cattle on June 15, 1885; and the parties of the second part agree to release said party of the first part and his sureties and cosigners on the note for $6500 and interest now sued on in the District Court of Clay County, Texas, and one $50 note against said party of the first part held by parties of the second part.

"And the parties of the second part agree that if the party of the first part fulfills this contract and delivers sufficient cattle to the parties of the second part to amount to $13,950, with 10 per cent per annum interest from this day until said cattle are delivered, at the rate of $14.50 per head, then the parties of the second part agree to bill of sale to the party of the first part all the cattle remaining in any of the brands described in said bill of sale heretofore referred to, if there be any remaining after said

cattle are delivered to said parties of the second part to pay said sum hereinbefore mentioned at the price before mentioned; and if all of said cattle are gathered and delivered to said parties of the second part by the time hereinbefore stated, then the parties of the second part agree to release and discharge said party of the first part and his sureties and co-signers from all indebtedness they hold against them to this date, including the notes hereinbefore mentioned held by C. E. Welesley, of Dallas, Texas.

"By stock cattle in this contract is meant cows, calves, yearlings, and 2-year-olds; and the said parties of the second part agree to allow said party of the first part whatever any cattle delivered and gathered by the party of the first part not stock cattle may be worth on the market at the time of the delivery, if in excess of average stock cattle, and if the cattle fall below average stock cattle then the party of the first part is to deliver sufficient cattle to pay the difference in their value and average stock cattle.

"Witness our hands and signatures this the 5th day of June, A. D. 1885.
"Witnesses:                                     J. L. Hull,
  "R. D. Wellborne.                     J. H. Davis & Bros.,
  "Frank Houston.                             By J. H. Davis."

This instrument was never recorded, nor did appellant have notice of it at the time the attachment was levied.

Hull, without contradiction, stated in substance that he made a trade with appellees whereby he sold them a portion of his cattle; that the transfer was in writing; that it was in two instruments which were made at the same time; that J. H. Davis & Bros. were afraid some one might attach the cattle and that they drew up a straight bill of sale in addition to the contract which contained the agreement; that Mr. Wellborne, J. H. Davis & Bros.' attorney, said it would not be necessary to put the contract on record, but that he would give witness a copy and record the bill of sale; that the contract was signed first, but the terms and conditions of both instruments were agreed upon before either was signed.

He further stated that "the reason that the larger instrument was made was that we thought there were more cattle than would take to pay the debt due J. H. Davis & Bros. The bulk of the cattle were running at large on the range; we thought there were about 1100 or 1200 head, and I thought it would take about 900 to pay J. H. Davis & Bros., leaving me about 200 or 300 head. They wanted to take all, but I would not agree to it, as I wanted the benefit of the surplus."

Hull denied that he delivered any of the cattle, and one or more of appellees contended that a range delivery was made on the day the two instruments were executed, and that thereafter they exercised control over them.

Under the conceded facts, that the two instruments, executed at the

same time and under the same agreement and consideration, must be considered together for the purpose of arriving at the real contract between the parties is clear.

So considered it is evident that it was not the intention of Hull to sell or of Davis & Bros. to buy the entire stock of cattle.

The instrument purporting to sell the entire stock of cattle estimated the number at 1200 head, but provided if there were more title to all should pass in consideration of $13,950, which was acknowledged to have been paid.

The other instrument shows that it was not intended between the parties that the sum due to Davis & Bros. should be satisfied by the conveyance evidenced by the other instrument standing alone, but that the debt should continue to be discharged by the delivery of cattle under the agreement, executory in character, wherein Davis & Bros. agree upon delivery of cattle sufficient in number to pay the sum due at price named to relinquish the debt due them, when a reconveyance should be made to Hull of all cattle not necessary to pay the sum due to Davis & Bros.

No cattle were identified as those Davis & Bros. were to receive in payment of the sum due them, but this was dependent on the future act of Hull, in the exercise of which he might select from the entire stock such as he saw proper to gather and deliver.

This furnishes an additional reason why the two instruments did not pass title to Davis & Bros.

The instrument first referred to purported to be an absolute conveyance; and if such was not the real intention of the parties, it is hard to escape the conclusion, looking to the writings alone, that the instrument was executed for the purpose and with intent to make it appear that Davis & Bros. were the real owners of all the cattle, when as between the parties it was not intended they should be, and thus to secrete from the other creditors of Hull the fact that he had an interest in the cattle.

If Hull's testimony be true such was the intent, and the whole transaction as to other creditors void and the cattle subject to attachment in favor of appellant levied upon them.

The transaction can not be considered a sale of all the cattle, for there was no extinguishment of the debt which the two instruments and all the evidence show was the sole consideration.

There having been no sale, the unrecorded instrument could not be considered as evidencing a conditional sale of so many of the stock as might not be necessary to pay the sum due to Davis & Bros.; for the two instruments not conveying the title, Davis & Bros. had no title to convey by sale absolute or conditional.

If the two instruments were not made with intent to hinder, delay, or defraud the other creditors of Hull, and they be considered together, then they show a valid agreement that Davis & Bros. were to have enough cat-

tle out of those belonging to Hull at price named to satisfy the sum due them, which seems to have included every debt referred to in the agreement, some of which Davis & Bros. had only assumed to pay.

If this was the real and only agreement and intent, then the question would arise whether one who has an executory contract of this character has such right in the property as would deprive other creditors of the right to have it seized under execution or attachment in their favor.

Such a state of facts could not give a right higher than could be held by a mortgagee whose right it would be to have a sufficiency of the cattle sold to pay his debt, while the right of the holder of such an executory contract would be to payment in cattle at a fixed price per head.

In the one case the satisfaction of the debt would be from the proceeds of the sale of the thing charged, while in the other it would be satisfied by the delivery of such part of the property in kind as might be found necessary to pay the debt.

It seems to us that one holding under such an executory contract looking to the payment of a debt by the delivery of property in kind, and not entitled to the possession of the entire property from which that to be delivered is to be taken, has no such right as will authorize him to maintain this statutory action.

It is unnecessary to consider what must be contained in a bill of sale which purports to convey cattle on the range, or to determine whether the instrument executed by Hull, and in terms purporting to make an absolute conveyance, would have been sufficient for that purpose had there been no other paper executed by the parties at the same time and as a part of the same agreement, for we hold that the two papers must be considered together, and that so considered they did not pass title to any cattle to Davis & Bros.

The contract between Hull and Davis & Bros. is evidenced by the two instruments executed at the same time, and no declarations of Hull subsequently made to other persons, tending to show that a contract was made at that time different to that so evidenced, either as to the transfer of the title or as to the delivery of the cattle, should have been received in evidence against appellant.

The writings as to those matters speak for themselves, and can not be varied by such evidence as was admitted.

There is no pretense that any contract was made between Hull and Davis & Bros. which superseded that evidenced by the two instruments already noticed.

Some of the charges given were not applicable to the only case shown by the evidence, but in view of what has already been said it is not now necessary further to consider the ruling of the court below in giving or refusing charges.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded*

Delivered November 7, 1890.

Justice Henry did not sit in this case.