### JOHN S. TRIPLETT v. B. W. MORRIS ET AL.

Delivered January 22, 1898.

**1. Sale of Goods—Delivery—Attachment.**

The title of goods passes so as to place them beyond attachment for a debt of the seller where there is an agreement by the owner to sell sufficient goods to be selected from a stock by the agent of the buyers at a certain per cent of the invoice price to discharge the seller's indebtedness to the buyer, and the agent has selected such goods as he deems sufficient to satisfy the indebtedness and separated them from the rest of the stock, and has taken possession thereof and canceled the indebtedness, notwithstanding that it still remains for him to invoice the goods and return any excess that may exist.

**2. Same—Sale Must Stand in Its Entirety.**

A sale of goods to one assuming to act as the agent of certain creditors of the seller in discharge of the claims of such creditors is invalid in toto if the agent had

no authority to act for one part of such creditors, though he may have had authority to represent the others.

### 3. Levy of Attachments—Conversion.

It is immaterial, in an action for conversion against a sheriff seizing goods belonging to plaintiff under an attachment against a third person, whether or not the goods had been levied on by the sheriff under another writ prior to the seizure complained of, or whether or not the proceeds were appropriated to the writ under which the seizure complained of was made.

### 4. Practice in Trial Court—Charge Withdrawing Allegations.

Plaintiff has the right, in the form of a special charge, to request the court to withdraw from the consideration of the jury an immaterial allegation of his petition not essentially descriptive of his cause of action.

### 5. Parties—Suit by Agent.

An action for goods converted while in the possession of an agent may be prosecuted in the name of the agent alone, or with his principals joined.

### 6. Statement of Facts—Prolixity.

A statement of facts will not be stricken out merely because of its prolixity, where the parties failed to agree upon a statement and it was made by the judge, and the prolixity was not due to any fault on the part of the counsel for appellant.

ERROR from Hood. Tried below before Hon. J. S. STRAUGHAN.

*J. J. Hiner* and *W. S. Essex,* for plaintiff in error.

*N. L. Cooper* and *B. M. Estes,* for defendants in error.

STEPHENS, ASSOCIATE JUSTICE.—Suit was brought February 27, 1891, by John S. Triplett, Hamilton-Brown Shoe Company, Gauss-Shelton Hat Company, and Rindskoff-Stern-Lauer & Co., against the sheriff of Hood County and the sureties on his official bond, for conversion, under attachment writ in favor of the First National Bank of Granbury against A. G. Dabney, of "certain clothing, dry goods, shoes, etc.," of the alleged value of $2500.

A jury trial was had upon a second amended petition, filed September 23, 1895, in the name of John S. Triplett alone, but which stated the facts substantially as in the original, and from a verdict and judgment denying him any recovery this writ of error is prosecuted.

His right to the goods depended upon the validity of a sale alleged to have been made by A. G. Dabney to him as agent for the three companies above named on the 15th day of December, 1890. Dabney was then doing a retail business at Thorp Springs, Texas, having a stock of dry goods and groceries which invoiced about $11,000. The groceries, or a part thereof, had just been attached by one firm of his creditors (Egloff Bros.) when the sale in question was made.

Being indebted to the three companies first above named in the several sums specified in the bill of sale copied below, Dabney proposed to Triplett, as agent for said companies, to pay off their debts in goods at the invoice price plus 20 per cent, which proposition Triplett accepted, and proceeded at once to select the goods, which, to quote from his testimony, was done as follows: "I picked out the goods and they moved them and piled them up for me as I selected them. I had the inventory

of the clothing bill, and felt it was necessary to act hastily, and knowing the value of the clothing, I took the clothing as a whole. The clothing had been sold in September. I know the clothing would amount to $1500, and after I got them I began to pick out from the stock such goods as could be readily converted into money, and when I thought I had enough I stopped taking the goods, and was impressed that they would pay my debts on the terms proposed, 120 cents on the dollar. I had Mr. Milliken and the other parties to bring the counters up side by side, and I selected the clothing as it was piled up. There was some other clothes that I did not want; they were shop worn. I had them taken away, and had other goods put there, and when I got through picking out the goods I wanted, I noticed some original shoe boxes in the south end of the house, and I had them brought out and piled under and around the counters, so as to keep them separate from the main stock; and when I got through I found some counter covers, and I covered the goods and put tags on them, and wrote on the tags: 'These goods belong to Stern-Lauer-Shohl & Co., these to Gauss-Shelton Hat Co., and these to Hamilton-Brown Shoe Co.,' to identify the goods I had bought. We did not have time to invoice the goods. I had the goods selected when Dabney came, and was ready to receive them. After he came the bill of sale was written out, signed, and handed to me."

The bill of sale reads:

"For and in consideration of the sum of $1480.95, owing by me to Rindskoff-Lauer & Co., of Cincinnati, Ohio, and the sum of $858.70 due Hamilton-Brown Shoe Co., of St. Louis, Mo., and the sum of $688.90 due the Gauss-Shelton Hat Co., of St. Louis, Mo., I hereby and by these presents sell and deliver to John S. Triplett, as agent for the above mentioned firms, all the clothing, dry goods, and shoes that have been set aside by me for the payment of said above mentioned debts, in consideration of which they release me from all liability on the amounts above named owing to said firms, and accept said goods in settlement thereof. The said John S. Triplett is to invoice said goods, and to pay me 20 per cent on the original invoice price of said goods, and if there be any goods remaining over and above enough to satisfy the above mentioned debts at the said price, the same is to be turned over to me.

"Witness my hand, this 15th day of December, 1890.

"A. G. DABNEY."

The excess provided for in the last sentence of this bill of sale amounted to about $100.

Immediately after the execution of the bill of sale, and before the goods could be invoiced, the whole stock was seized by the sheriff; first under the attachment of Rice, Stix & Co., covering something over $3000 worth of dry goods, but including only a small portion of the goods claimed by Triplett, and then under that of the First National Bank of Granbury, which covered the entire stock, subject to prior levies.

The main defense interposed was that the sale to Triplett was incom-- plete, and hence did not vest any title in him.  This issue, so far at least as plaintiff in error is concerned, seems to have been correctly and fairly submitted to the jury, unless, possibly, the charge be subject to the ob- jection of repetition.  It only required him to show that the goods for the conversion of which he sued had been so separated from the rest of the stock as that they could be identified previous to the levy, and that nothing remained to be done by the seller to complete the sale.  The is- sue was thus submitted in conformity with the rule laid down and dis- cussed with so much ability by Justice Coke in the leading case in this State on that subject of Cleveland v. Williams, 29 Texas, 204.

The defendants in error, however, contend that the sale was but ex- ecutory, in that Triplett was to invoice the goods delivered to him and return to Dabney the small excess as provided in the bill of sale.  It is clear that nothing further remained to be done by Dabney, the seller, and great doubt has been expressed "whether the general rule could be made to extend to cases where something remains to be done to the goods, not by the seller, but by the buyer."  Benj. on Sales (Bennett), p. 250, sec. 332.

True, this distinguished author lays down the rule, which has several times been expressly approved by the Supreme Court of the United States, that "where the buyer is by the contract bound to do any thing as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."  Benj. on Sales, p. 244, sec. 320.

But this rule finds its appropriate application in cases where the title of the buyer is impliedly made to depend upon the performance of his undertaking, which usually is to pay for the goods.  In the case at bar, not only were the goods actually delivered to Triplett, accompanied by the bill of sale, but the debts which they were delivered to pay were actually satisfied and canceled.  As between Triplett and Dabney, the latter had no right to the possession of any of the goods delivered to the former when the attachments were levied.  The legal title to the whole lot so delivered had passed to Triplett, who held in trust for Dabney a small undivided interest.  The contract between them gave Triplett a right coupled with an interest to the possession of all till he had an op- portunity to invoice them, which was a right of dominion and a quali- fied ownership, sufficient to support an action for damages against a tresspasser.

This vested right and opportunity Triplett could not be deprived of by a wrongful attachment levy.  No fraud or other vice being shown in the contract between Triplett and Dabney, a creditor of the latter could acquire no better right to the possession of the goods than Dabney had. This interest of Dabney, however, was not placed beyond the reach of creditors.  It was subject to levy as provided in article 2349, Revised Statutes, reading: "A levy upon personal property is made by taking

possession thereof, when the defendant in execution is entitled to the possession; where the defendant in execution has an interest in personal property, but is not entitled to the possession thereof, a levy is made thereon by giving notice thereof to the person who is entitled to the possession, or one of them when there are several."

A levy, not in the manner thus prescribed, but by seizure, made the sheriff a trespasser, and entitled Triplett to recover the value of the entire lot of goods so taken from him, provided the sale was otherwise valid. This conclusion is not in conflict with Bank v. Davis, 78 Texas, 362, which has one feature in common with the case at bar. There the purchasers had not canceled the debt, though they had received a bill of sale to the cattle, and the contract was made executory by the provision that the seller was to gather enough of the cattle described in the bill of sale, at a specified price per head, to satisfy the debt, which he had not done when the attachment was levied. Hence the general rule, as laid down in Cleveland v. Williams, supra, was held to apply.

The validity of the sale in the case at bar was further denied upon the ground that Triplett did not have authority to represent all the creditor companies named; and with reference to this isssue, he complains that the court should have granted a special charge to the effect that if he had authority to represent any of them, he was entitled to recover the full value of the goods, the court charging that in such case he would be entitled to recover "an amount proportionate to the amount of indebtedness of such" as he was authorized to act for. The charge requested was properly refused, and that given, we think, was more favorable to appellant than the law warranted.

The case is not analogous to that of a trust deed made by a debtor to secure such of his creditors as will accept its provisions. Here the proposition was to pay the debts of three firms or companies, no more and no less, in goods at a specified price. That, and no other, was the proposition accepted. The trade so made must stand or fall as made. We have no means of determining whether a different proposition would have been made or accepted. A debtor might be willing to compromise with several of his creditors, when he would not be with a single one, and vice versa.

The amended petition, upon which the case was tried, charged the sheriff with the seizure and appropriation of the goods in question under the bank's attachment, taking no notice of that of Rice, Stix & Co. The court, in submitting this issue, charged the jury that it was incumbent on plaintiff to show by a preponderance of the evidence that the goods for the value of which he sued, "or a part of the same, had been taken by said sheriff and appropriated by him, under and by virtue of the attachment writ in the case of the First National Bank of Granbury against A. G. Dabney, and none other;" and further, that if "said goods were taken and appropriated by defendant Morris, under and by virtue of any other writ or process than that in the case of the First National Bank of Granbury v. A. G. Dabney," to find for the defendants.

Error is assigned to this charge, and also to the refusal of the following charge requested by plaintiff: "You are instructed, gentlemen of the jury, at the request of plaintiff, that if you have found under the general charge that plaintiff was authorized to purchase the goods alleged to have been purchased by him, and that he did purchase said goods, and that said goods were separated from the other goods in the store and set apart to him, and if you further find after such purchase defendant Morris or his deputy, J. F. Henderson, on December 15, 1890, levied the writ of attachment issued in the suit of the First National Bank of Granbury against A. G. Dabney, No. 785, on the said goods, and by means of said writ took said goods out of the possession of plaintiff, it will be your duty to find for the plaintiff."

The error so assigned seems to us to be fatal to the judgment. It was immaterial whether the goods, if seized under the bank's writ, had also been seized under the prior writ in favor of Rice, Stix & Co., and it was also immaterial whether, after being seized and taken out of the possession of plaintiff under the bank's writ, they had or had not been appropriated under that writ. The conversion was complete without the subsequent appropriation. It may be that the learned district judge was justified in submitting the case as alleged of the subsequent appropriation under the bank's writ, but not, we think, in requiring plaintiff to also prove that the goods had not been seized and appropriated under some other writ. This he had not alleged. And as the further allegation of the subsequent appropriation was superfluous, the special charge quoted, which eliminated that feature, should have been given, rather than the charge that was given, as above indicated.

Plaintiff had the right to request the court, as was in effect done by his special charge, to withdraw from the consideration of the jury an immaterial allegation of his petition, it not being essentially descriptive of his cause of action, and he being required to prove only the substance of the issue. That was done in this case when plaintiff proved a seizure of the goods described in the exhibit to his petition under the bank's writ. It mattered not what became of the goods afterwards, or what other seizures had been made.

A like objection is taken to another paragraph of the charge, but it need not be discussed.

In view of the apparent confusion in the proof as to what goods were seized under the two writs, and what became of them, and of the undisputed fact that the bank's writ was levied on all the goods, though subject to the Rice, Stix & Co. levy on at least part of those in controversy, we think the jury must have been misled by the charges complained of. We can not otherwise very well account for the verdict.

The defendants in error seek to sustain the judgment upon cross-assignments of error, complaining that their special demurrers interposing the statutes of limitation should have been sustained to the amended petition; but as this amended petition does not show when the original was filed, and the original appears only in the statement of facts, it may

be doubted whether we can review the ruling on demurrer. However, we are of opinion that the amended petition did not state a new cause of action. We think the companies in whose behalf Triplett acted were properly joined as parties plaintiff in the first instance, and that the suit might have been maintained by them alone, and hence see no good reason why they should have disappeared from the case. We are also of opinion that the suit was maintainable by Triplett alone, and, as he was an original plaintiff, may still be maintained by him, though in the original petition the prayer was for the recovery of the debts of the other plaintiffs as the measure of damages. The original petition stated substantially the same facts as did the amended one, and also prayed for general and special relief.

On account, therefore, of the error above indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—The motion of defendants in error to strike out the statement of facts, though submitted before, was not passed upon until the case was considered on its merits, when it was overruled. No authority was cited to sustain the motion in the first instance, but in support of that ground of the motion for rehearing, besides rules 72-78 and a decision of the Court of Criminal Appeals, the case of Caswell v. Hopson, 43 Southwestern Reporter, 547 (Civil Appeals, Fifth District), is now cited. In that case, however, counsel had agreed upon the statement of facts, while in the case at bar they failed to so agree, and consequently the judge made it out, and it is not made to appear that the objectionable feature of prolixity was due to any fault on the part of counsel for plaintiff in error. In such a case, it would not do to deprive a party having a meritorious case of a statement of facts. That the statement should have been greatly abridged does not admit of question.

The other grounds of the motion for rehearing are sufficiently covered by the conclusions already filed, and it will be overruled.

*Overruled.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.