P. W. HUMPHRIES AND ANOTHER v. THOMAS FREEMAN AND ANOTHER.

In order to enable creditors to set aside an assignment made by a debtor, as fraudulent, it is not necessary that the assignee should have been influenced by a fraudulent intent, or that he should have intended to assist the debtor to defraud his creditors, provided he had notice of the intended fraud of the debtor.

It is constructive notice, if the assignee be in possession of such facts as would reasonably satisfy an individual of the fraudulent intent of the debtor, or put him upon inquiry in relation thereto.

A secret trust for the benefit of the assignor, accompanying an assignment by an insolvent debtor, held to be a sign, if not decisive evidence, of fraud; especially, when the debtor transfers all his property subject to execution.

It is of no avail that an assignee, after suit brought, offer to deliver the property to other creditors, on being paid the amount of his claim against the assignor.

A purchaser of property, to protect himself, must not only pay value, but must not know, or have good reason to believe, that by his purchase, he is enabling his vendor to make a disposition of his property, for his own benefit, which of right belongs to his creditors.

It is the duty of the court, in cases of fraudulent conveyances, to charge the jury that a knowledge in the vendee, of the fraudulent intent of the vendor, makes the purchase void; and that actual knowledge need not be proved, if the purchaser had the means of knowing by the use of ordinary diligence.

APPEAL from Travis. Tried below before the Hon. A. W. Terrell. This action was brought in the court below, by appellants, creditors of Case, against appellees, to annul and render void, on the ground of fraud, a sale and transfer made by Case to Freeman, of certain articles, to wit, one Coleman's patent mill and two copper stills and fixtures. Judgment by default was taken against Case, for want of an answer.

The defendant, Freeman, answered by general denial, and specially by setting forth the transaction, admitting that he had purchased from Case, a Coleman patent mill, two copper stills and fixtures, which cost Case, in New Orleans, $454; that he took an assignment of them, by transfer of the bills of purchase, while the articles were *in transitu;* that he took them in payment of a

debt of $234 70, with interest for about nine months, also paying transportation and charges amounting to $40 10; and that he purchased the property with an agreement to reconvey to Case, on being repaid these several sums within a reasonable time: but in answer to interrogatories attached to the petition, he denied knowing of the insolvency of Case, or any motive in himself, except securing the payment of a fresh debt due him; or any motive in Case to defraud, hinder or delay creditors. He also denied knowing that plaintiffs were creditors, or that there were judgments against him, but admitted that he was aware that Case was embarrassed in his circumstances, and that he had been informed that executions had been issued against him; and again repeated, what he had before averred in his answer, a willingness to surrender up the property to Case, or any of his creditors, on being paid the amount which the property cost him.

The statement of facts showed that it was proven on the trial, that Case was indebted to Freeman in the sum of $234 70, besides interest from May, A. D. 1856; that in December, A. D. 1856, Case purchased and paid for, in New Orleans, certain property, to wit, one Coleman's patent mill, at the price of $179, and two copper stills, worms, &c., at the price of $275; that the latter were purchased in the name of C. H. P., of Austin, to whom the whole were consigned; that before the property reached Austin, to wit, in February, 1857, Case sold the property to Freeman, at the nominal price of their cost in New Orleans, and receipted to Freeman for the same in full; Freeman taking them in full payment for his debt, subject to cost and charges of transportation, with an agreement, not apparent upon the face of the transaction, that Freeman should reconvey the property to Case on being repaid the amount Freeman had paid for them, within a reasonable time. It appeared that Freeman was a merchant in Austin, and that Case resided in the country, some five or six miles distant, and transacted most of his business in Austin. It appeared that the claims of appellants had been, for a considerable time previous to the purchase of the property by Case in New Orleans, reduced to judgments, and

several executions upon them had been issued, and returned by the sheriff, no property found; and that Case was, and had been for some years, notoriously insolvent.   It was also proven by said C. H. P., in whose name the stills were purchased, and to whom said property was consigned, that he had no knowledge or connection in the purchase of, or paying for, any of the property, or its consignment to him, until after the consignment was made.   And it was also proven, that Case had erected suitable buildings within a short distance of his residence, in which to receive and put in operation the mill and distillery.

On the conclusion of the evidence, the court charged the jury,

1st. Fraud is never presumed, but must, when relied upon, be proved.   It is seldom capable of direct proof, on account of its secret character.   It may be established by circumstances; that the jury were authorized to consider all the circumstances in evidence, to determine whether or not fraud really existed in the transfer of the property in controversy; and if fraud did exist, to find for the plaintiff, otherwise for the defendant.

2d. Should the jury find, from the circumstances and the facts in evidence, that Freeman received the property in controversy under what purported to be an absolute transfer and sale, yet had a private agreement or contract that Freeman should reconvey to Case, on his paying him at some future time a pre-existing debt due Freeman; that Case was notoriously insolvent, at the time of said sale or transfer; and if they further found the value of the property transferred was greatly more than the debt due Freeman; then the transaction would be a fraud in law, as to the creditors of Case; and if plaintiffs were creditors of Case, the jury would find for them.

3d. If the jury found, that a fraud in law had been committed in the transfer of the property from Case to Freeman, then the answer of the defendant disclaiming a fraudulent intent, could not relieve him from the legal consequences of his acts, and the jury would find for the plaintiffs.

4th. That if the jury believed that Freeman, in the contract with Case, was not only attempting to secure his debt, but made use of his demand to shield the property of Case against his creditors, by holding the property subject to a secret trust for the benefit of Case, they would find for the plaintiffs.

5th. If the jury believed from the evidence, that Freeman had no other motive than to secure the payment of a fresh debt, that there was no concealment in the transaction, they would find for defendant.

6th. Any admissions made by defendant in his answer, the jury have the right to take as true, without further proof.

The plaintiffs asked for various charges, fourteen in number, all of which were refused, except No. 9, which was not shown by the record whether to have been given or refused. The tenth, which is the only one, of which the court in its opinion takes any particular notice, is as follows :

"That if Freeman had any knowledge of the intention of "Case, to defeat, hinder or delay creditors, by the sale made "by him to Freeman, then in that case, Freeman was party to a "fraud in fact, as against plaintiffs, and the jury should find "for the plaintiffs."

The jury having returned a verdict for defendant, Freeman, the appellee, the counsel for the plaintiffs moved the court for a new trial, and assigned for cause, various errors in the charge as given, as also in refusing to give the charges prayed for ; and also assigned the general allegation that the verdict was contrary to the evidence given, and contrary to law.

The motion for a new trial having been overruled, the plaintiffs prayed an appeal to this court.

*Chandler* and *Turner*, for appellants.

*Shelly* and *Carrington*, for appellees.

WHEELER, CH. J. It is not questioned, and, indeed, it is quite evident, that the assignment was made with the intention

on the part of Case, not merely to pay or secure the debt of Freeman, but to reserve and secure a benefit to himself, free of the claims of creditors. He was embarrassed, and indeed, was notoriously insolvent; judgments had been recovered against him, on which numerous executions had been issued; property was not found to satisfy them, and some of them were in the hands of officers, ready to be levied upon any of his property that might be discovered. He had erected, near his residence in the county, a mill-house, and buildings suitable to receive the mill and stills in question, and put them in operation. He had purchased them in New Orleans, and had them shipped, and was expecting shortly to receive them; but on their arrival, they would most certainly be levied on, and taken in satisfaction of some of the executions against him, if he did not, by some means, place them beyond the reach of creditors. He, therefore, finds one of his creditors, to whom he owed a debt considerably less than the value of the articles, and assigns them absolutely to him, Freeman, with a private understanding—that is, an understanding that did not appear on the face of the transaction—that he should have the privilege of paying the debt and charges, within a reasonable time, left indefinite, and of reclaiming the property. By this means, the property, on its arrival, would appear to belong absolutely to Freeman; and would be thus sheltered and placed beyond the reach of creditors, until the opportunity should be afforded, it may be, to annex it to the freehold upon his homestead, where he had prepared to receive it; or until he could make some other disposition of it, for his own benefit. He, of course, knew that the reservation, thus secretly, of a benefit to himself, was in fraud of his creditors, who would otherwise levy upon the property; and that the effect of the arrangement made with Freeman was, to defeat their claims as to this property. That it was, on his part, a contrivance intended "to delay, hinder, or defraud creditors," is quite sufficiently apparent. Then, so far as he is concerned, it is free from doubt, that the assignment

4

was made in violation of the statute, and is, by its terms, declared fraudulent and void.

Can it be doubted, that Freeman had notice, that Case was acting in fraud of his creditors? It is not necessary that he should have been influenced in what he did, by a like fraudulent intent, in order to avoid the assignment as to him also; or that he should have intended to assist Case to defraud his creditors; or that he should have had actual knowledge that such, in fact, was the intention of Case. It is sufficient to affect him with notice, if by ordinary diligence he might have known. If he had a knowledge of such facts, as were calculated to create a suspicion that such was the purpose of Case, and to put him upon inquiry; if, in a word, he had reason to know or believe that such was the intention of Case, it is sufficient to avoid the assignment as to him, as effectually as if he had actually known it. What, then, are the facts? Case was indebted to him; he had difficulty to get his money; he knew the embarrassment of Case, and that executions had been levied on his property. Case proposes, in payment of, or security for his debt, to assign to him the bills of purchase of this property, it not having yet arrived; exhibits to him the evidences of his bills, which disclose the fact that the larger part of it had been purchased, not in the name of Case, the real purchaser, but of a third person, who was the ostensible owner. He, Freeman, accepted the assignment of the property, at the nominal sum of its original cost, expressed and receipted for in the assignment, and a sum considerably greater than the debt it was really intended to pay or secure; and had a private understanding with Case, that he, Case, should have the privilege of paying the debt he owed Freeman, within a reasonable time, and of reclaiming his property. Can it be doubted, that the facts were sufficient to suggest to a man of ordinary discernment, what must have been the motive of Case? Freeman must have known, that articles such as these had not been purchased and brought here from New Orleans, for the purpose of being thus disposed of, to pay debts at less than their cost; but that they were intended for an en-

tirely different purpose.  He could scarcely have been ignorant, that Case had a motive in having the purchase made, not in his own name, but in that of a third person, and that he had a like motive in assigning the property to him, with a secret reservation for his own benefit, before the property came within the reach of his creditors.  The "reasonable time" he gave Case to reclaim the property, must have been solely for the benefit of Case and to suit his convenience; for, it seems, that Freeman had thought before this, that he had already waited on Case for his debt a reasonable time, and was urgent to have it paid.  His knowledge of the embarrassment of Case, was quite sufficient to suggest the true motive, when such a proposition was made by Case.  A secret trust for the benefit of the assignor, accompanying an assignment of property by an insolvent debtor, has always been held to be a sign, if not decisive evidence, of fraud; especially where, as in this case, the debtor transfers all the property he has, that is subject to be taken in execution.  All these facts, known to Freeman, were certainly sufficient to put him on inquiry, and to affect him with notice; and consequently, to affect the property, in his hands, with the fraud of his assignor.  The evidence ought to have been decisive in the minds of the jury, that the assignment was fraudulent and void under the statute, as having been made with the intent to delay, hinder and defraud the creditors of Case.

It is not improbable, that the jury were influenced in their finding, by the offer of the defendant to surrender the property, upon being paid his demand against Case ; and perhaps, by the belief, that his real purpose was to save himself from loss, and not to defraud the other creditors of Case.  And such may have been his intention.  He may have been actuated solely by a desire to secure his own debt, and may not have wished to assist Case in shielding his property from the claims of other creditors.  But his offer to surrender the property, upon payment of his debt, was of no avail.  He could not impose such terms upon other creditors.  Nor was it sufficient to make him a *bonâ fide* purchaser, that his purpose was not to defraud the

other creditors of Case, but to secure his own debt. He must not have had notice of the fraud being perpetrated, or attempted to be perpetrated, by his assignor. Notice, in such cases, makes a man a *mala fide* purchaser, although he paid value. It is, *per se,* evidence of *mala fides.* In order that the purchaser may be protected, he must not only have paid value, but he must not have known, or have had reason to know, or believe, that he was enabling his vendor to make a disposition of property, for his own benefit, which of right belonged to his creditors.

It seems impossible to resist the conviction, therefore, that in the first place, Case made the assignment with the intent to delay, hinder or defraud his creditors ; and in the second place, that Freeman accepted the assignment with notice. And this, under the statute, makes the assignment fraudulent and void as to creditors. And it results, that the jury found manifestly contrary to law and the evidence ; and that their verdict ought to have been set aside, and a new trial granted.

We have not thought it necessary to revise the rulings of the court upon instructions to the jury. It is, however, to be observed, that the jury were not informed by the charge of the court, as to the effect of notice to the assignee ; and that it would avoid the assignment, if fraudulent on the part of the assignor. The fifth proposition in the charge was calculated to mislead upon this point, by inducing the belief that, if the defendant was not actuated by an intention to defraud the other creditors of Case, but by a desire to secure his own debt, that, of itself, was sufficient to protect him in his purchase. And this, perhaps, would be the impression produced by the entire charge of the court.

The tenth instruction asked by the plaintiff and refused, was calculated to correct this impression. The only possible objection there can be to this charge is, that it seems to assume and take for granted, that the jury would find the transaction fraudulent on the part of Case. But the proposition it contains, as to the effect of knowledge on the part of the defendant, of the purpose of his assignor, was so important and pertinent to the

case, that it ought to have been submitted to the jury, in some form. They ought further to have been apprised by the charge, that actual knowledge of such fraudulent intent was not necessary; that the means of knowing, by the use of ordinary diligence, amounted to notice, and was equivalent to actual knowledge, in contemplation of law; and it may be, that the want of this information, is the true way to account for their finding.

But it is sufficient for the decision of the case, that whatever may have caused the jury to return such a verdict, upon such proof, it is manifestly contrary to law and the evidence; and the court, therefore, erred in refusing a new trial; for which the judgment is reversed, and the cause remanded.

Reversed and remanded.