WALLACE & WAGGENER ET AL. v. W. M. BAGLEY.

No. 155.

1. Deed of Trust to Secure Preferred Creditors — Powers of Trustee.—An insolvent retail merchant executed a chattel mortgage upon his stock of goods to secure preferred creditors. The property conveyed was of greater value than the amount of the debts of creditors preferred to plaintiffs in error, and plaintiffs in error were entitled to share in the surplus. The mortgage empowered the trustee to conduct a cash retail business in the usual, customary manner. *Held*, the interest of plaintiffs in error in the proceeds of the property gave them a direct interest in the power sought to be conferred upon the trustee as to the sale of the property. The power to conduct a retail business was inconsistent with the right of the mortgagor's creditors to have their debts paid when due, or to subject his property to such payment, and will not be upheld against a creditor having an interest in the property or its proceeds.

2. Same—Discretion of Trustee to Sell in Bulk.—The provision in the mortgage that the trustee is also given power, if it should appear to be the interest of the beneficiaries, to sell in lots or bulk at his discretion, places the irresponsible discretion of a third party between the property of an insolvent debtor and his creditors, and places the action of the trustee as to the manner of sale beyond the control of the courts.

3. Same — Acceptance by Beneficiaries.—If the instrument were not objectionable in its grant of power to the trustee, it was necessary to its operative effect against attaching creditors that it should have been accepted by the

beneficiaries in it.  It has no legal force until it becomes a contract between such parties, and it can not become a contract between them until there is mutual assent to its terms.

4. Same—Acceptance by Trustee.—The trustee can not represent the beneficiaries in accepting the mortgage unless he be authorized by them so to do.

ERROR from Collin.    Tried below before Hon. R. DE ARMOND, Special Judge.

The instrument referred to in the opinion is as follows:

"*The State of Texas, Collin County.*—Whereas I, J. P. Levy, of the city of McKinney, Collin County, Texas, being justly indebted to the following named persons and firms and corporations of the following named places, in and about the following amounts, and being desirous of securing the payment of the same, and in consideration of the sum of $10 to me in hand paid by W. M. Bagley, of the city of McKinney, Collin County, Texas, the receipt of which is hereby acknowledged, have sold, mortgaged, transferred, and delivered, and do hereby sell, mortgage, transfer, and deliver to the said W. M. Bagley all my stock of goods, wares, merchandise, fixtures, safe, show cases, etc., now situated in the city of McKinney, Collin County, Texas, in that certain two-story brick building situated on the north side of Louisiana Street, opposite the postoffice in said city, and being the same building in which I am now doing business in said city; and also, for the same purpose and to the same end, I likewise hereby transfer, sell, and assign to said W. M. Bagley all of my notes, accounts, books, and credits; all of said goods, wares, merchandise, fixtures, safe, books, and accounts, notes, credits, etc., being simultaneously with the execution hereof turned over and transferred to the actual possession of the said W. M. Bagley.  This instrument is intended to be a chattel mortgage upon said goods and a transfer of said credits to secure the payment of the following described debts, to-wit.  [Here follows a list of creditors and the amount of their claims, including Wallace & Waggener, whose claim is stated at $1200.]

" The conditions hereof are, that the said mortgagee shall take immediate possession of said property and every part thereof, and all of said credits, and he shall first proceed to take an inventory of the same, and then he shall proceed to reduce the same into cash by sale of the property, goods, etc., in the usual course of business for cash, unless at any time it shall appear to be to the interest of the beneficiaries to sell the same in lots or in bulk, in which event said mortgagee is hereby invested with power to exercise his discretion in the premises; and to likewise collect the said credits.  And after he shall have reduced said property and credits into money he shall first pay all legitimate expenses incident to the execution of this mortgage, including clerk hire, taxes, insurance, etc., and reasonable attorney fees in all cases where he may need the aid

of counsel in carrying out the provisions hereof, or in defending his possession under this mortgage, and also including a commission of 10 per centum on the gross amount realized from such sales and collections; and then he shall pay off the herein before named debts in the following order, to-wit. [Here follows seriatim the names of seven preferred creditors, not including appellants, Wallace & Waggener.]

"And all the remaining named creditors shall be paid pro rata; and any balance of which property, credits, or money that shall remain in said mortgagee's hands after paying said expenses and indebtedness in the order above named, he shall turn over to me, or to my assigns. It is further expressly provided that the leasehold interest which I hold in and to the building in which I do business in said city of McKinney is hereby likewise transferred to the said mortgagee to be by him sold as the other property, and the proceeds arising therefrom to be by him distributed in the same manner. And the said mortgagee shall from time to time, not exceeding every fifteen days, distribute the funds realized by him in the order herein before named."

*K. R. Craig* and *J. A. L. Wolf*, for plaintiffs in error.—1. The conveyance from Levy to plaintiff, Bagley, attached to plaintiff's petition, shows upon its face that it was fraudulent and void as against creditors of said Levy, because it did not provide for the immediate conversion of said Levy's property to the satisfaction of his debts.

2. Because the assignor, Levy, interposed between his creditors and their right to demand the conversion of his property the independent, unlimited, unrestrained, and irresponsible discretion of a third party, viz., the assignee. Gallagher v. Goldfrank, Frank & Co., 75 Texas, 52; Wallis v. Adoue & Lobitt, 76 Texas, 118; Jaffrey v. McGehee, 107 U. S., 361; Raleigh v. Griffith, 37 Ark., 153; Wait on Fraud. Con., sec. 316; Dunham v. Waterman, 17 N. Y., 9; Burr. on Ass., 3 ed., sec. 166; Bump on Fraud. Con., 415, 411; Bank v. Inloes, 7 Md., 380; Truitt v. Caldwell, 3 Minn., 364; Gere v. Murray, 6 Minn., 305; Bartlett v. Teah, 1 McCrary, 176; Rindskoff v. Guggenheim, 3 Colo., 284; Olney v. Tanner, 10 Fed. Rep., 101; Peters v. Leight, 76 Pa. St., 289.

*M. H. Garnett*, for defendant in error.—The conveyance from Levy to Bagley being in form and effect strictly a chattel mortgage, and containing a clause that after the debts were paid any balance should be returned to the mortgagor, could not have had the effect in law to have hindered or delayed appellants or any other creditor of the said Levy in the collection of his debt, even if the goods mortgaged exceeded in value the debts secured by the instrument. Any creditor had the right to pay off the debts secured by the instrument and levy his attachment upon the goods, or without paying the debts so secured to make his levy in accordance with

articles 167, 2292, and 2296 of the Revised Statutes. Schmick v. Bateman, 77 Texas, 326; Stiles v. Hill, 62 Texas, 429; Scott v. McDaniel, 67 Texas, 315; Waterman v. Silberberg, 67 Texas, 100; Sparks v. Pace, 60 Texas, 298.

FINLEY, ASSOCIATE JUSTICE.—The facts of this case are as follows:

1. J. P. Levy, who was a grocery merchant at McKinney, Texas, on January 21, 1890, executed a chattel mortgage upon a stock of goods, wares, and merchandise, etc., to W. M. Bagley, purporting to be for the benefit of a number of creditors of said Levy, whose names and debts were set out in the instrument. A copy of the instrument appears in the transcript, as an exhibit to plaintiffs' petition, and reference is here made to it for ascertainment of its entire contents.

2. The mortgage purports to be made to secure the debts of twenty-one different creditors of Levy, whose debts amounted in the aggregate to $2300 or $2400. Seven of these creditors, whose debts in the aggregate amount to $577.34, were preferred over the other creditors named in the instrument. These seven creditors were first to be paid in full in the order named, and then the balance of the proceeds of the property conveyed was to be paid to the other creditors named in the mortgage, pro rata. Appellants were creditors of Levy to the extent of a debt of $1500, and were embraced in the mortgage in the latter, or unpreferred, class of creditors.

3. At the time the conveyance was made, Levy was wholly insolvent; all his property subject to execution was embraced in the mortgage, and the value of the property conveyed was between $1500 and $2000.

4. On execution of the mortgage, possession of the property conveyed was turned over to W. M. Bagley, and he promptly accepted the trust imposed by the instrument upon him.

5. On January 23, 1890, appellants brought suit on their claim, obtained the issuance of the writ of attachment, caused the stock of goods conveyed in the mortgage to be seized under the writ, and thereafter had them sold under legal process, and the proceeds applied to the payment of their debt against Levy.

6. There was no evidence on the trial showing that any of the creditors for whose benefit the mortgage purported to be made procured its execution, or had accepted it, or indicated any intention to accept it.

7. The evidence shows that all the debts named in the instrument were bona fide, though there was some inaccuracy in the statement of the amounts due the respective creditors.

8. It was shown that in January, 1890, before the execution of the mortgage, Levy bought from appellants a bill of goods amounting to over $900. That at this time he was insolvent; that with full knowledge of his insolvency, to obtain these goods, he represented to the agent of ap-

pellants that he was in good financial condition and would be able to meet the bill promptly, and would thereafter discount his bills. At that time he had no intention of paying for the goods, but did intend to make the very disposition of them which was attempted by the execution of the mortgage. A considerable portion of the goods taken under appellants' attachment came through this purchase. Bagley had no knowledge of the representations made by Levy to appellants' agent, or of his fraudulent intent, and had no knowledge of any circumstances which would have put him on notice. So far as the evidence shows, Bagley acted in good faith.

9. The mortgage directs that the trustee "shall proceed to reduce the same [property conveyed] into cash by sale of the property, goods, etc., in the usual course of business, for cash, unless at any time it should appear to be to the interest of the beneficiaries to sell the same in lots or in bulk; in which event said mortgagee is hereby invested with power to exercise his discretion in the premises," etc.

*Conclusions of Law.*—The instrument of conveyance executed by Levy to Bagley was a chattel mortgage. Johnson v. Robinson, 68 Texas, 400. Appellants were interested in the proceeds of the property; the property was of greater value than the amount of the debts of the creditors preferred to appellants, and appellants were entitled to share in such surplus. This interest in the proceeds of the property gave appellants a direct interest in the power sought to be conferred upon the trustee as to the sale of the property. Under the power granted in the mortgage, the trustee was authorized to dispose of the goods " in the usual course of trade for cash." As this business was a retail business, the trustee under this grant of power was authorized to conduct a cash retail business, in the usual customary manner. This power was inconsistent with the right of Levy's creditors to have their debts paid when due, or subject his property to the payment of such debts. It is true that the trustee is also given power, if it should appear to be to the interest of the beneficiaries, to sell in lots or bulk, at his discretion. But this provision places the unlimited irresponsible discretion of a third party between the property of an insolvent debtor and his creditors. It places the action of the trustee as to manner of sale beyond the control of the courts. For a court is not authorized to substitute its discretion for that of the trustee, where the instrument creating the trust expressly confers the discretion upon the trustee. Dunham v. Waterman, 17 N. Y., 9. Such a grant of power should not be upheld against a creditor having an interest in the property or its proceeds. Gallagher v. Goldfrank, Frank & Co., 75 Texas, 562; Gregg v. Cleveland, 82 Texas, 187; Jaffrey v. McGehee, 107 U. S., 361–365; Galigher v. Griffith, 37 Ark., 153; Bump on Fraud. Con., 3 ed., 415; 1 Cobbey on Chat. Mort., sec. 413.

If the instrument were not objectionable in its grant of power to the trustee, it was necessary to its operative effect against attaching creditors that it should have been accepted by the beneficiaries in it. It can not be binding upon others until it is binding upon the maker and those for whose benefit it is made; and it can not become binding upon the beneficiaries until they accept it. It has no legal force until it becomes a contract between such parties; and it can not become a contract between them until there is mutual assent to its terms. The trustee can not represent the beneficiaries in accepting the mortgage, unless he be authorized by them to do so. Alliance Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401.

We are of opinion that plaintiff below was not entitled to recover, and that the judgment should be reversed and here rendered for appellants.

*Reversed and rendered.*

Delivered February 21, 1894.

Motion for rehearing overruled February 21, 1894.

Writ of error refused by the Supreme Court March 22, 1894.