### Temple Grocer Company et al. v. E. C. Clabaugh.

Decided April 27, 1898.

**Insolvent—Deed of Trust—Preferences—Exacting Releases.**

A deed of trust by an insolvent debtor which conveys his property for sale, and payment, first, of preferred creditors, second, of such of the unpreferred as would accept and release the debtor from the balance of their claims, is fraudulent and void. An attachment by an unpreferred creditor levied after acceptance by the trustee, by the preferred, and by some of the unpreferred creditors, will hold the goods against such trustee and accepting creditors claiming under the deed.

Appeal from Bell. Tried below before Hon. John M. Furman.

*Banks & Cochran*, for appellants.

*Harris & Saunders*, for appellee.

COLLARD, Associate Justice.—This suit was brought December 8, 1896, by E. C. Clabaugh, the appellee, against the appellants, the Temple Grocer Company, a private corporation, L. J. Tankersly, sheriff of Bell County, and the sureties on his official bond, Spencer Young, Levi Anderson, D. W. Moore, and T. W. Cochran, to recover $1500 actual damages and $1000 exemplary damages for the taking and conversion of a stock of goods conveyed by W. R. D. Stockton, by a deed of trust for the benefit of certain creditors, in which Clabaugh is the trustee.

June 9, 1897, defendants answered by general demurrer, general denial, and special plea that the deed of trust under which plaintiff claimed the goods was fraudulent and void as to creditors of Stockton. Defendants also justified the taking by valid writ of attachment sued out by the Temple Grocer Company against Stockton, which was levied upon the goods.

The facts are as follows: It was agreed that on the 10th day of November, 1896, W. R. D. Stockton was a merchant engaged in the business of general merchandise in Belton, Bell County, Texas, was isolvent,

and had not sufficient property to pay his debts, and upon the same day he executed and delivered to E. C. Clabaugh the following deed of trust:

*"The State of Texas, County of Bell.*—Know all men by these presents, that I, W. R. D. Stockton, of the State and county aforesaid, for and in consideration of the sum of $10 to me in hand paid by E. C. Clabaugh, of the said State and county, the receipt of which is hereby fully acknowledged and confessed, and for other good considerations hereinafter expressed, have this day bargained, sold, and delivered to said E. C. Clabaugh all the staple and fancy groceries, show cases, furniture and fixtures, accounts and notes, which I now own and possess and have in the John Allen store, stone grocery building, on the west side of Main Street in the city of Belton, Texas, south of and adjoining the two-story building of Harris & Saunders, for the following purposes, uses, and trusts, to wit: Whereas, I am justly indebted to the following creditors in the following amounts and desire to pay them who accept, as far as possible, in the order named and preferred herein to wit: Class A [here followed a list of nine creditors, with claims aggregating $796.68]; Class B [here followed a list of sixteen creditors, with claims aggregating $1237.99, including the Temple Grocer Company, with claim of $734.24].

"Now, it is my intention that the said E. C. Clabaugh shall sell and dispose of the property conveyed to him in trust for the benefit of the above named creditors, as follows, and pay them as follows: Said trustee, E. C. Clabaugh, shall sell and dispose of the property herein conveyed to him in such manner as will best inure to the benefit of my said creditors, and shall first pay such creditors as are mentioned in Class A the amount of my said indebtedness in full; and next, after deducting from the balance that may remain of the amount realized from the sale of said property an amount to reasonably cover the expenses and labor of executing this trust, said trustee only shall pay to said creditors in Class B as shall accept the terms of this deed of trust, and agree to fully release me from all further indebtedness on all amounts of their aforesaid claims against me, a pro rata amount on their claims if there should not be enough of said remainder to settle their said claims in full, and shall pay over to me any balance, if any, that remains. Witness my hand this 10th day of November, 1896.

(Signed)                    "W. R. D. Stockton."

The instrument was duly acknowledged and filed for record as a chattel mortgage on the day of its execution. It was further agreed that the debts mentioned in the deed of trust were actually owing by W. R. D. Stockton, before and at the date of the deed of trust and upon that day E. C. Clabaugh accepted the terms of the trust and took possession of the property mentioned in the deed of trust and entered upon his duties as such trustee, before the levy of attachment by the Temple Grocer Company; that all the creditors in Class A accepted the terms of the deed of trust before said levy. The goods conveyed by the trust deed

were, on the 11th day of November, 1896, seized and taken out of the possession of the trustee by defendant sheriff, by virtue of a writ of attachment sued out by the Temple Grocer Company against said Stockton, in a suit in the County Court of Bell County upon the said debt due it, and the writ was levied by the sheriff on said goods, and neither the goods nor their value have been returned to the trustee. The value of the goods at the time of seizure was $1200. The trustee accepted the terms of the deed of trust prior to the levy of the attachment, and so did Berringer and Grimes and Donovan, creditors named in Class B. There was no understanding of any kind between the trustee and Stockton or any other person, that the trustee was to hold the goods for the benefit of Stockton, nor that he (the trustee) was to hold them until Stockton could get a settlement or compromise from his creditors, nor was there any agreement by the trustee that Stockton should have any interest of any kind in the goods. The cause was tried by the court without a jury, and judgment was rendered July 16, 1897, for appellee Clabaugh against the defendants for $1249, to bear interest from date of judgment at 6 per cent per annum, from which this appeal is prosecuted.

The trial judge filed conclusions of fact, substantially as above set out, and concluded that the trust deed is a valid instrument, and that the goods levied on in the hands of the trustee were not subject to the levy, and that he was entitled to recover as he did.

*Opinion.*—There is but one question raised by three assignments of error presented by appellants. Was the deed of trust fraudulent and void because of the clause therein, that the trustee shall only pay to the creditors in Class B as shall accept the terms of the deed, and agree to fully release Stockton from all further indebtedness on all amounts of their claims?

The debts in Class B amounted to $1237.99; those in Class A to $796.68. After the debts of Class A would be paid under the deed, there would be $403.35 left with which to pay the debts of Class B. The debt of the defendant, Temple Grocery Company, amounted to $734.25. The fund was not sufficient to pay all the debts in full, though it would overpay the debts in Class A.

The question is pertinent, and must be decided. We believe the provision in the deed of trust, requiring accepting creditors in Class B to release in full their claims, rendered it fraudulent and void when applied to the facts.

The same rule should govern in case of a mortgage with power to sell as in assignments, unless controlled by statute. In mortgages with power of sale in a trustee to pay debts, the provision in the deed before us would amount to a fraud upon the class of creditors who are required to release their debts in order to take a benefit thereunder. The restriction is coercive, compelling them to release a part of a fund which they could otherwise subject to their debts by legal process.

Bigelow, in his work on Frauds, pp. 281, et seq., says: "The property is held by the trustee, and held effectively until a surplus is found, after paying the assenting creditors, if the assignment is to be treated as valid. More than that, the professed purpose is to obtain a discharge on part payment; that is, where the debtor is supposed to be insolvent, as he ordinarily is in making an assignment. It is often said that this is 'coercive,' 'repressive,' and unjust, and so it is. But the better way of putting it is that it is fraudulent. It is fraudulent in the plainest sense, for it is a scheme between A and B by which one of the two seeks to keep his property, present and future, from the reach of C, his creditor."

Our statute allows this, however, as to all creditors in case of a general assignment, but it required a statute to make it effective, and the statute does not apply to a deed of trust made to secure debts. As to deeds of trust, the law is not changed.

Bump puts the doctrine upon the additional ground that while a debtor may prefer his creditors, he must do so in good faith for the benefit of the creditor, and not to secure a benefit to himself; and also upon the ground that by such condition he locks up a part of his property from his creditors until they come to his terms and accept the condition. Bump on Fraud. Conv., 3 ed., p. 131. This would hinder and delay such creditors in the collection of their debts.

Waite supports the doctrine, and quotes from Hyslop v. Clark, 14 Johns., 458, and cites Baldwin v. Peet, 22 Texas, 708, and other cases from other States. See also 2 Pom. Eq., p. 1458, note 2, and authorities cited; Burr. on Assign., sec. 195, and 2 Perry on Trusts, sec. 592.

In Baldwin v. Peet, cited above, and many other decisions following that case in this State before the general assignment law of 1879, it was held that an insolvent debtor could prefer his creditors in a general assignment of his property for their benefit, and that such trusts were legal, though they had the necessary effect of delaying creditors in the collection of their debts; but it is clearly announced that the debtor can not thereby secure any benefit to himself, and if he do so, the deed will be void. Our statute regulating general assignments for the benefit of creditors permits the debtor to stipulate for a discharge on the part of accepting creditors, provided that there shall be no discharge as to a creditor who does not receive as much as one-third of his allowed claim. Acts 1879, p. 57, and of 1883, p. 46, re-enacted in Rev. Stats. 1895, arts. 71 and 72.

But as before stated, such a stipulation for release could not have been made before the statute authorizing it. It would have rendered the assignment void. The law of trust deeds to secure creditors has not been changed by the assignment statutes. If a debtor desires to make a legal deed for the benefit of creditors with such a condition, he must comply with the statute, and make the assignment contemplated by the statute, and have the property administered under the statute. Preferences are expressly prohibited by that statute, yet they are still recognized rights of the debtor and preferred creditor in the execution of a deed of trust

by a trustee. The law that formerly governed in assignments and trusts, has only been changed as to a statutory assignment. The law of trusts, as it formerly prevailed, has not been changed as to ordinary deeds of trust to secure creditors. Creditors may by them be preferred, but the debtor can not therein provide for a benefit to himself to the detriment of the creditor.

The doctrine as originally declared in Baldwin v. Peet, decided in 1859, still holds good as to trusts other than those made in compliance with the statute of assignments.

In the case of Carlton v. Baldwin, 22 Texas, 724, the court shows that some special provisions in an assignment would be merely badges of fraud, but it is held that if the debtor provide in his deed to retain control of the funds for the purpose of forcing his creditors "into a consent to the assignment, and a release of the surplus of their claims, such control, covertly devised (under provisions not in themselves necessarily fraudulent) for such a purpose would render the deed fraudulent as to creditors."

This is the most direct announcement of the law upon the subject that has yet been made by the Supreme Court of this State, so far as we are advised.

The Court of Appeals, as formerly constituted, with jurisdiction of civil cases, distinctly decided that a reservation in an assignment for the benefit of creditors (not controlled by the statute), that creditors who accept its provisions shall thereby discharge the debtor from their claims, rendered the deed "fraudulent and void upon its face, as to creditors."

We believe this is sound law, and that it ought to be enforced. There is great apparent conflict of authority upon this subject, and we will not undertake to reconcile the conflict. We believe the reason and justice of the case, as well as the weight of authority, are, that such a reservation renders the deed fraudulent and void.

Appellants' counsel cite many authorities sustaining the doctrine, and many more might be referred to, but we deem it unnecessary to discuss them.

There are many cases decided by the courts of this State which indicate that the rule should be as herein announced, and that it ought to be so held. Some of the cases so holding are cited in appellants' brief, to wit: Sonnetheil v. Texas G. & T. Co., 30 S. W. Rep., 949; Wallace v. Bagley, 6 Texas Civ. App., 484; Refining Co. v. Harrison, 29 S. W. Rep., 500; Gallagher v. Goldfrank, 75 Texas 562; Oppenheimer v. Halff Bros., 68 Texas, 412; Elser v. Graber, 69 Texas, 222. See also Duggan v. Bliss, 34 Am. Rep., 80, and authorities cited.

There are many cases decided by the courts of this State upon a question quite analogous to that involved in this case; we mean cases where a trust deed provided for the payment of certain debts, some of which are fictitious. In Blair v. Finlay, 75 Texas, 210, the lower court charged the jury: "If you find from the evidence that the debt or any

part thereof claimed by Mrs. Blair is unreal and fictitious, then the deed of trust is void as against Finley & Brunswig, if they were creditors of the corporation." Associate Justice Henry, speaking for the court said: "Where an insolvent debtor conveys all his property to secure or pay a debt that is partly or wholly fictitious, we think such a charge as the one quoted above would be proper, when the issue is made by both the pleading and the evidence."

In another case, Brasher v. Jamison, 75 Texas, 141, the debt to pay which a bill of sale was made was stated in the deed to be $2250, and the proof showed that in fact it only amounted to $1800. The court held that if any part of the consideration was unreal or fictitious, it would invalidate the conveyance, because in such case the entire transaction is tainted."

In these last two cases it is evident that the grantor and grantee knew the debt or part of it was fictitious, and hence they were implicated in the fraud. And upon the principle thus established, it has been held that where one or more of the debts are fictitious, and there are other bona fide debts secured by the same instrument, the owners of which accepting the security did not know of the fraud, as to them the deed would be valid and should be enforced. So in Shoe Company v. Mars, 82 Texas, 496, it was held that a fraudulent or fictitious debt secured by assignment with other valid debts, "would not, in the absence of knowledge or concurrence of the assignee or other creditors secured, avoid the mortgage as to them." The converse of the proposition is true, that if the assignee or secured creditors had known the facts of fraud they would have been parties to it, and could not claim under it.

The opinion of Chief Justice Lightfoot, in the case of Rider v. Hunt, 25 Southwestern Reporter, 315, 316, is a clear and sound elucidation of the question, holding that unless the owners of valid secured debts had knowledge that some of the debts secured were fictitious, the deed as to them would be free from the fraudulent intent; and therefore the debt would be properly secured by the deed.

In the case of Shoe Company v. Lastinger, 26 Southwestern Reporter, 924, it was held that bona fide creditors secured by mortgage were not affected by the fraud of the husband, securing thereby a debt declared to be due his wife's separate estate, when in fact the debt was not due her as stated, and could not be paid under the mortgage; but in that case it does not appear that the other secured creditors had cognizance of the invalidity of her debt. Bank v. Davis Bros., 78 Texas, 365. It is true, and we do not combat the proposition that a fraud of the kind stated in the foregoing case necessarily vitiates the trust as to other bona fide creditors. That must depend upon their knowledge or ignorance of the fraud.

Now in the case at bar it can not be affirmed that any of the creditors were ignorant of the fraud apparent on the face of the deed, as applied to the facts. The fraudulent stipulation is contained in the instrument, and affects all who claim a benefit under it. They are parties to

it. If it be fraudulent as to some of the parties, it is fraudulent as to all. We see no escape from the conclusion that the deed of trust to plaintiff, the trustee, E. C. Clabaugh, was fraudulent, as applied to the facts—the value of the property conveyed and the amount of the debts secured in both classes; and therefore, that the trustee can not recover in this action and enforce the provisions of the deed of trust compelling creditors in class B to discharge the debtor upon receipt of part satisfaction of their claims.

The judgment of the lower court, in our opinion, must be reversed and here rendered for defendants, that plaintiff take nothing by his suit and defendants go hence with their costs. We decide nothing as to the rights of creditors against defendants for the overplus that may remain in their hands, after payment of the debt and judgment of the Temple Grocer Company.

We have derived great assistance from the able brief of counsel for appellants.

*Reversed and rendered for appellants.*

FISHER, CHIEF JUSTICE.—At present I express no opinion on the question decided.