### DURRETT et al. v. CHENAULT et al.
### (No. 1790.).

(Court of Civil Appeals of Texas. Amarillo.
April 13, 1921.)

**1. Fraudulent conveyances ⬥308(1)—Evidence sufficient to go to jury.**

In an action by a creditor of a widow who deeded property to her children, in which she had a life interest at least, receiving notes for the purchase price, where it appeared that the notes were not collected, evidence on the question whether the transaction was fraudulent as to existing creditors *held* sufficient to go to the jury.

**2. Fraudulent conveyances ⬥96(3)—Transaction whereby an indebted widow conveyed real property to children receiving notes held fraudulent as to existing creditors.**

Where a widow sold her interest in real property to her children, with intent to defraud creditors, and the children knew or were charged with knowledge of such intent, the transaction whereby the widow received notes in payment may be attacked as fraudulent to creditors, whether the obligations were to be treated as bona fide or not, for where payment is made in notes which postpones satisfaction of a creditors' demand to a distant date, the transaction is subject to attack for fraud.

**3. Fraudulent conveyances ⬥181(1)—Conveyance by widow to children only partially valid.**

Where in settling an estate in which a widow and children were entitled to interests in lands the widow conveyed land to the children, receiving a life interest in a portion of the lands, and the fee of other lands, *held* that, if the children had notice of the widow's intention to defraud existing creditors, the transaction was valid only in so far as they received the present value of their interests.

**4. Fraudulent conveyances ⬥97—Conveyances in family settlement by widow to children not open to attack as voluntary.**

Where a widow and children who were interested in lands, by conveyances inter partes made settlement, the widow getting the fee to some of the lands, and the children to others, the conveyances, in view of the fact that the widow received vendor's lien notes, could not be attacked by existing creditors as voluntary

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under Rev. St. 1911, art. 3967, for such conveyances were supported by a consideration deemed valuable in law.

**5. Fraudulent conveyances ☞272—Grantees held not to have burden of showing that grantor was possessed of remaining property sufficient to pay debts.**

A widow, who was indebted, having in settlement of her husband's estate conveyed land to 'her children, and received herself the fee in some of the lands, and a life interest in others, as well as notes, the conveyances, being supported by a consideration deemed valuable in law, were not prima facie void so as to cast on the children the burden of showing that the widow was possessed of remaining property sufficient to pay her debts.

**6. Fraudulent conveyances ☞271(3)—Creditor, attacking conveyance supported by consideration, has burden of proving fraud.**

Where conveyances by a widow to her children were supported by consideration valuable in law, the creditor has the burden of establishing the necessary facts to show fraud.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Mrs. Marcellus Durrett and another against Mrs. Kate Chenault and others. From a judgment against the named defendant, but denying other relief sought, plaintiffs appeal. Judgment against the named defendant affirmed, and otherwise reversed.

Read, Lowrance & Bates, of Dallas, for appellants.

J. L. Goggans, B. B. Hemphill, O. F. Wencker, and W. F. Bane, all of Dallas, for appellees.

HUFF, C. J. Mrs. Durrett, joined by her husband, as plaintiff, sued Mrs. Kate Chenault on two notes, one for $1,000, dated July 3, 1913, and due December 13, 1913, bearing interest at the rate of 10 per cent.; the other note for the sum of $300, dated August 6, 1914, due six months after date. The payee in both notes was John W. Fields, and both provided for 10 per cent. attorney's fees. It was alleged the notes were secured by a chattel mortgage on 200 sheep, 25 head of horses and mules, and 20 cows; that the property had been sold or had died; that John W. Fields died, leaving a will; and that the executor under the will properly assigned the notes to appellant. The petition joined, as defendants with Mrs. Chenault, her children, David J., Emerson and William O. Chenault, and her two daughters, Mrs. Sallie K. Love and Mrs. Amelia Frances Eaton, with their respective husbands. It is alleged, in effect, that on December 10, 1914, Mrs. Chenault executed a deed to David J. Chenault for 200 acres of land, to Sallie K. Love, 120 acres of land, to William O. Chenault 135 acres of land, to Emerson Chenault 90 acres, and to Amelia Frances Eaton 135 acres; that no cash consideration was paid by either of the parties; that each gave their respective notes for $2,500, payable to the order of Mrs. Kate Chenault, on or before 20 years, and that a vendor's lien was retained in each of the deeds to the respective tracts of land so conveyed; that the deeds by Mrs. Kate Chenault to her children were without any valid consideration; that the deeds were executed for the purpose of hindering, delaying, and defrauding her creditors, etc.; that appellants' debt had accrued prior to executing the deeds; that all of the children had notice that the deeds were made for the purpose of defrauding, etc., and alleged that some of the notes had been returned without having been paid; that under the will of John Chenault, the husband of Mrs. Kate Chenault, she was entitled to a life interest in all of said lands amounting to 546 acres; that appellant is informed Mrs. Chenault did not take under the will, but took under the law of descent and distribution, and that she was entitled to one-half in all of the property, being her community interest in the land, which was reasonably worth $50,000. They alleged in the alternative, if she took under the will, she was entitled to a life estate which was reasonably worth $10,000; that if appellant is not entitled to cancellation of the deeds they are entitled to an injunction against Mrs. Kate Chenault, restraining her from transferring the notes. The prayer is for judgment on the notes, that the deeds to the land be declared void, and that Mrs. Kate Chenault's interest in the land be held subject to the indebtedness. If the deeds cannot be set aside, the appellant have judgment, enforcing the named children from paying the notes, and to pay the proceeds into the registry of the court, and that Mrs. Kate Chenault be enjoined from transferring the notes.

There was a jury in the trial court, but the judge instructed the jury to return a verdict against Mrs. Kate Chenault, in favor of the appellant, for the amount of the notes, principal, interest, and attorney's fees, $2,018.50, and to find for the defendants upon the other issues.

The first assignment presents as error the action of the court in instructing a verdict on the issue of fraud in conveying the land to the children. The propositions thereunder are:

"(1) It was error to instruct a verdict where there was any evidence on the issue as to whether Mrs. Chenault executed the deeds to her children with intent to delay; hinder, or defraud her creditors in the collection of their debts; (2) the burden is on the children to whom their mother deeded the property to show that they paid a valid consideration, and

that the mother retained a sufficient amount of property, subject to execution, to satisfy her creditors; (3) their gift, which is not upon consideration, is void as to prior creditors," etc.

[1] The facts we do not think show the property deeded to the children the community proper of Mrs. Chenault and her deceased husband. It is true that Mrs. Chenault claimed that it was and in consulting her lawyer he advised that she had a community interest in 240 acres of land, but it would take a lawsuit to establish it. This Mrs. Chenault was unwilling to enter into. There is no evidence in the record to show how or from whence her husband, John Chenault, derived the title to the 800 acres of land, which appears passed by his will a life estate to his wife, Mrs. Chenault, and at her death the title to vest in the children. The children contended that Mrs. Chenault had only a life estate. Mrs. Chenault was indebted and she says she desired to sell some of the land to pay her debts, but her children would not join her in the deed and that they then made an agreement to divide it and it appears did so, by executing to each deed to several tracts of land, and in the division the mother was deeded 120 acres and as we understand, in fee. The children obtained the several tracts, but executed to Mrs. Chenault their several notes, for the sum of $2,500, payable to her order, on or before 20 years after date. The notes, we take it, were negotiable, and secured by vendor's lien on their respective tracts of land. Mrs. Chenault also obtained a life estate in 10 acres of land as a homestead, having situated on it the home place—the house and outbuilding. Mrs. Chenault, the evidence tends to show, at the time of executing the deeds and the notes, was insolvent and indebted to several parties. The personal property upon which a chattel mortgage was given to secure appellant's debt, had been disposed of by Mrs. Chenault—just when is not shown—she says by consent of Mr. Fields, the original payee of the notes. He is dead, but when he died is not shown. Mrs. Chenault testified her children had not paid the notes or the interest on them, and repeats this several times, but does admit that one son paid her $1,500; that another claimed she was indebted to him, and she surrendered his note and released the lien to satisfy his claim. Another son, she says, she renewed his note, and had placed it up as collateral security to a $500 debt due the bank. One of the daughters never agreed to give the note, and in order to secure her consent to join in the division agreed that upon signing the deeds and notes the mother would return the notes and release the lien on her land. This it appears was done. The other daughter, in order to sell her land, had

to sell the 10-acre homestead with it, and her mother signed the deed, surrendered that note, and released the lien, but that the daughter executed a new note for $2,000, and agreed to pay her mother $15 a month and give her a home and board. This seems to have been complied with. One of the sons, whose note she says was placed up as collateral, contradicted his mother, and swears he paid the note, as much as $1,000 at a time. Mrs. Chenault testified her children did not know of the indebtedness sued on, or that she had borrowed the money from Mr. Fields, for which the notes were given. One of the sons testified he knew nothing of the indebtedness sued on at the making of the deeds. The testimony shows that one of the sons took charge of the land and farmed it for some time for his mother, and further shows she lived with one of the daughters. The old lady testified, however, that the children, at the time of the execution of these deeds, had all married and left her. We believe there are some circumstances that some, if not all, of her children knew of her condition financially at the time of making the deeds.

We are inclined to the view under all the testimony, while meager and unsatisfactory, that the testimony raises a question for a jury to say whether the mother sold for the purpose of putting her property beyond the reach of her creditors, and whether under the circumstances the children were charged with knowledge of such purpose. We are inclined to think the jury, from the testimony, would have been authorized to find that she had only a life estate in the land. The evidence would tend to show that such estate was of the value of the 120 acres of land received by the mother under her deed and a life estate in 10 acres of land and the notes executed by the children; that 60 acres of the 120 acres was incumbered, or was absorbed by a debt due a loan company for $5,000, and the debt due a bank, the amount of which is not shown, and that the other 60 acres was absorbed by a debt due another bank, a part of which at least was a debt due one of her sons, which he had transferred to the bank, and for which the bank foreclosed its lien and sold the remaining 60 acres. If the notes were paid by the other children, it is not shown what was done with the money, and whether applied upon other indebtedness. Mrs. Chenault refused to turn over either of the notes on the indebtedness, or permit appellant to collect one and apply on the indebtedness sued upon.

[2] If the mother sold her interest in the land to the children, whether it was a life estate or a community interest, with the intent to hinder, delay, or defraud her then existing creditors, and the children knew of such intent, or by the circumstances sur-

rounding them at the time they were charged with such knowledge, and they then executed negotiable notes for such interest, with or without the intent to have them returned and released, or whether they were executed as representing a bona fide obligation to pay or not, the transaction would be void as to the existing creditors. Traylor v. Townsend, 61 Tex. 144; Blum v. McBride, 69 Tex. 60, 5 S. W. 641; Blum v. Simpson, 66 Tex. 84, 17 S. W. 402; Id., 71 Tex. 628, 9 S. W. 662; Humphries v. Freeman, 22 Tex. 45; Martel v. Somers, 26 Tex. 551, 560. Our Supreme Court has said, where payment is made in negotiable promissory notes, payable at a future time, which postponed satisfaction of the creditor's demand to distant dates, and deprived him of present enforcement of their debts, and made their ultimate collection contingent upon the continued solvency of the makers of the note, it would render the transaction subject to attack for fraud. Seligson v. Brown, 61 Tex. 180, 184.

[3] In dividing the estate so as to give the children the present value of their interest in their future right contingent upon the death of their mother, would not, as to such interest, withdraw any property subject to the debts of Mrs. Chenault's creditors; but in doing so no more of such interest than its then present value should be taken than would satisfy the interest set apart, and in doing so they could not purchase their mother's interest with notice of her intent to defraud, if such existed, by paying her the money therefor, or executing their notes. Their position, we think, was analogous to that of a creditor taking property from an insolvent debtor to pay his debts. He can do so, but he can take no more than is reasonably sufficient to satisfy the debt. Coughran v. Edmondson, 106 Tex. 541, 172 S. W. 1106; Oppenheimer v. Half, 68 Tex. 409, 4 S. W. 562; Wallace v. Bagley, 6 Tex. Civ. App. 484, 26 S. W. 519. Under the facts in this case, we do not think we would be justified in holding as a matter of law there was no unlawful intent on the part of Mrs. Chenault, or that if there was that the children did not know, or could not have known, thereof by ordinary diligence. An intent to defraud is an emotion of the mind, and, as fraud is usually conceived in secret, there are generally no means of ascertaining whether it exists, except by observing the acts of the parties engaged in any transaction and deducing the intent from those in accordance with certain principles which have been established by observation and experience. The jury were not required to accept the testimony of the parties that there was no fraudulent intent or no knowledge thereof, but they could look to the evidence establishing certain facts, as indices of a purpose or knowledge, and deduce therefrom conclusions contrary to the statement that there was none. Where facts, acts, or words are shown, which, according to experience result in hindering, delaying, or defrauding creditors, the absence of proper explanations may be a potent factor in establishing fraud.

[4-6] In this case, however, we do not agree with appellant that the facts raise the issue of voluntary conveyance under article 3967, R. C. S. The facts show a division was agreed upon, and the deeds executed between the children and the mother; she setting over to them their respective interests in severalty, and they conveying to her 120 acres, as we understand in fee, as part consideration for her interest, together with a life interest in 10 acres, and that notes were executed from the children for their respective parts, retaining a vendor's lien, and it would also appear a part of the consideration was the settlement of a controversy as to whether the mother took a community interest in the whole or in part, or only a life estate. It is our view, in so far as this record goes it conclusively shows that the deeds executed by the mother were upon "consideration deemed valuable in law." If the appellants were creditors at that time the conveyances were not prima facie void as to them, and the burden was upon appellees to show that Mrs. Chenault was possessed of property remaining subject to execution sufficient to pay her debt. We do not think Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, and cases following it, applicable to the facts in this case. But, as above stated, we think the evidence conclusively shows a consideration, and the burden will be on the appellant to establish the necessary facts showing fraud. Parks v. Worthington, 101 Tex. 505, 109 S. W. 909; Bump on Fraudulent Conveyances (3d Ed.) 997. This case evidently was not fully developed by either party in the court below. Mrs. Chenault is old, and apparently infirm, and with but little knowledge of the various matters upon which she was examined, or her testimony may evidence a reluctance upon her part to give her testimony. For the reasons above given, we sustain the first assignment.

There is some evidence as to the particular land conveyed to two of the children, which perhaps, with other oral testimony unobjected to, pointed out the particular deeds sought to be annulled. We think, however, the particular deeds sought to be annulled should be offered in evidence or secondary evidence produced under the statute and rules of evidence. We hardly think the imperfect record in this case would alone justify us in affirming the case. As we view the case, it will be unnecessary to discuss the other assignments, as the matters complained of are

not likely to arise upon another trial. The judgment rendered against Mrs. Chenault on the indebtedness will be affirmed, but as to other matters the judgment will be reversed.

⊜➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes